ESTATE OF ARGENE J. RUBISH AND VIVIAN M. RUBISH, Personal Representative and Surviving Wife, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Rubish v. Commissioner
Docket No. 15051-81.
United States Tax Court
T.C. Memo 1985-406; 1985 Tax Ct. Memo LEXIS 218; 50 T.C.M. (CCH) 685; T.C.M. (RIA) 85406; August 12, 1985. Vivian M. Rubish, pro se. A. Chris Zimmerman, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $34,124.89 in petitioner's Federal estate tax. He later amended his answer to increase the deficiency to $39,268.34. After concessions, the sole issue for determination is the fair market value of decedent's Steamboat Springs Ranch at the date of his death. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Argene J. Rubish ("decedent") died on October 28, 1977. Petitioner, Vivian M. Rubish, his widow and the executrix of his estate, resided at the time of filing the *220 petition in this case at Las Vegas, Nevada. In the Federal estate tax return which was filed for the estate on July 28, 1978 with the District Director of Internal Revenue in Portland, Oregon, the property known as the Steamboat Springs Ranch and which was devised by by decedent to his sons, was reported to have a fair market value of $310,000 and no attempt was made to elect a special value for the ranch under section 2032A [1] or to extent that time within which the return could be filed or such election could be made. Mrs. Rubish stated at trial that in arriving at the amount of $310,000 she relied upon an appraisal by Edward A. Galemba. In his appraisal report, Mr. Galemba stated that as of September 29, 1978, the ranch was worth $391,300 based upon sales of comparable ranches during 1978. He concluded, however, that at the time of Mr. Rubish's death, October 28, 1977, the ranch was worth only $310,000 because there had been an appreciation rate of about *221 25 percent to 27 percent for property in the area in the eleven-month period from Mr. Rubish's death to the date of the appraisal. Mr. Galemba did not testify at trial. During the audit of the estate tax return, Mrs. Rubish, through her attorney, sought a second appraisal of the ranch. This appraisal was provided by Robert H. Maddox, who concluded that the property was worth $490,000 at the date of Mr. Rubish's death. Mr. Maddox, who testified at trial as an expert witness for respondent, based his opinion on sales of comparable ranches made at dates close to the date of death. With reference to the difference in his valuation and that of Mr. Galemba, he stated in his letter of appraisal: I would like to comment on the difference in valuation between the Galemba report and my report, as well as make some passing comments on the IRS Collateral Examination of which you provided a copy. It appears to me that the appraisal technique involved in Mr. Galemba's report is not considered a valid approach to the valuation as of an historic date; that is, Mr. Galemba used current sales and tried to depreciate them for the date of valuation. I believe had Mr. Galemba used the comparable *222 sales data available in the neighborhood as of the date of the appraisal (October 28, 1977) his valuation would have been higher. OPINION Under section 2033, the gross estate of a decedent includes the value of all property to the extent of the interest therein of the decedent at the time of death. Thus, Steamboat Springs Ranch is includible in the estate of Mr. Rubish at its fair market value which we have been asked to resolve, a process previously described as "weighing evidence of expert guesswork." . In addition, prior to trial we admonished both parties that a factual issue of this nature is clearly "more properly suited for the give and take of the settlement process than adjudication," and that in the "final analysis, the Court may find the evidence of valuation by one of the parties sufficiently more convincing than that of the other party, so that the final result will produce a significant financial defeat for one or the other, rather than a middle-of-the-road compromise." . To determine fair market value, the standard *223 to be applied is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of all relevant facts. Sections 20.2031-1(b) and 25.2512-1, Estate and Gift Tax Regs.; . See . Petitioner has the burden of proof. [2] Rule 142(a). On this record we conclude that $490,000 was the fair market value of the ranch on the date of death. The appraisal in the amount of $490,000 relied upon by respondent was sought and obtained by petitioner from Mr. Maddox and the record does not contain anything to discredit it even though Mr. Maddox appeared at trial to explain his valuation and was subjected to cross examination by petitioner. On the other hand, we are unable to rely upon the appraisal obtained by petitioner from Mr. Galemba. He did not appear at trial and was not subject to cross examination. Furthermore, *224 his valuation was admittedly based upon comparable sales made a year after the date of death and then discounted back to the date of death by an unverified appreciation factor. Finally, petitioner argues that we should accept the $310,000 valuation because the estate could have qualified the ranch for an even lower figure by claiming a special use valuation under section 2032A. This we cannot do even if we were satisfied that the estate qualifies under section 2032A because the tax relief granted by section 2032A is available only with a timely election for such relief. The election must be made not later than the time prescribed by section 6075(a) for filing the estate tax return, including any extension thereof. Sections 2032A(a)(1)(B) and 2032A(d)(1). It is clear from the record and undisputed by petitioner that an election to qualify under section 2032A was not made in this case at any time. Having failed to make a timely election, the statutory relief is not available to the estate. [3] See Teubert v. United States, an unreported case ( D. Minn. 1983, 51 AFTR 2d par. 83-1340, 83-1 USTC par. 13,513); see also . *225 Secs. 20.2032A-8(a)(3) and (b), Estate and Gift Tax Regs. [4]
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, in effect during the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The entire increase claimed by respondent in his answer is attributable to issues other than the value of the ranch.↩
3. Furthermore, while at is not entirely clear, it appears from the record that the ranch was sold before the date of trial which, if true, would require a recapture of any tax benefit available under section 2032A.↩
4. See also .↩